## Linton v. Washington County

*Sanford S. Finder*, for plaintiff.
*David L. Gilmore*, for defendant.

SWEET, P. J., November 5, 1974.—Robert Leet Linton, Jr., has sued the County of Washington—for this purpose, the Commissioners—for a cause of action which seems to sound in false imprisonment. He alleges that "early in 1974" and "Despite the fact that the plaintiff received no notice of . . . hearing, the Domestic Relations Office obtained and served a bench warrant upon the plaintiff and lodged him in jail for a period of one week." He avers this was an abuse of process and claims he is entitled to both compensatory and punitive damages.

The plaintiff seeks to connect this alleged misconduct with the County of Washington by his paragraph 7 which says: "The defendant herein is the employer and the principal, and is responsible for the operations and actions of the Domestic Relations Office as a matter of law." The County of Washington has demurred to the complaint. The county solicitor says that the complaint fails to state a cause of action against the county because the County of Washington cannot be civilly liable for actions of officers of the judicial branch of government.

On demurrer, of course, we assume as verity all facts well pleaded. Therefore, the county cannot take refuge in the fact that one Betty Ann Linton, wife of plaintiff, filed a complaint for support with the Domestic Relations Office, that plaintiff received notice of the complaint and failed to appear at the hearing. For this purpose and this purpose only, we must assume that plaintiff received no notice of the hearing, that a bench warrant was served and that Linton was incarcerated. However, the demurrer does not admit misstatements of law, either erroneous or malevolent, nor does it admit items of mere opinion or unnecessary surplusage.

Bearing these principles in mind, let us examine paragraph 7 where plaintiff seeks to tie the allegedly wrongful conduct of the Domestic Relations Office to a principal, the County of Washington. This paragraph 7, as noted hereinbefore, says that defendant herein is the employer and the principal, and is responsible for the operations and actions of the Domestic Relations Office as a matter of law. This just is not true, and being an averment of law is not well pleaded. The Act of Assembly[1] provides that whenever the court having jurisdiction of domestic proceedings may deem it necessary or desirable, it may appoint one or more discreet persons of good character to serve as desertion probation officers during the pleasure of the court, for the performance of such duties as the court shall direct. Since we can take judicial notice of our own record, we know that Louis Wilson was appointed by order of this court as Domestic Relations Officer in 1974.

The question of control of the judicial employes has attracted a good deal of attention lately. No one

---

[1] June 12, 1913, P. L. 502, sec. 3, 48 PS §135.

could believe that the County Commissioners operate the Domestic Relations Office, since the work there is not only by its nature, but also expressly by law, a function of the court. However, there has been recent litigation arising under Act 195 of 1973 to determine who is the employer of the judicial employes for labor relations purposes. Even for this economic purpose, the Supreme Court recently in Sweet v. Pennsylvania Labor Relations Board, 457 Pa. 456, 322 A.2d 362 (1974), held that the judicial employes were not squarely county employes. Chief Justice Jones, speaking for an unanimous court, said, in part:

"The relation of employer and employe exists when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done (citing cases). . . . The courts of this Commonwealth under our Constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice."

The Chief Justice then went on to quote onetime Chief Justice Maxey " 'that judicial power includes the authority to select persons whose services may be required in judicial proceedings or who may be required to act as the assistants of the judges in the performance of their judicial functions.' " See In re Surcharge of County Commissioners 12 D. & C. 471, Lack. C.P. (1928).

The Commonwealth Court has even more recently enunciated the same principle in Fischer v. Commissioners of the County of Erie, handed down July 23, 1974, at nos. 23 and 24, T.D. 1973, where it enjoined the Erie Commissioners from exercising certain managerial functions over the district attorney's and register's employes. If the commissioners can be en-

joined from exercising control over such employes and if in the economic sphere they cannot control the bargaining with such people, it is a travesty to assert that defendant-county is the employer and principal of the Domestic Relations Office. Probably no other litigation has been better known in the courthouse this year than Sweet v. PLRB; so it is hard to see why this claim was made.

The distinguished judge, the Hon. Harry Montgomery, formerly of the Superior Court, was sent by the Supreme Court to sit specially in York County in Anderson v. County Commissioners of York.[2] Here, the matter at stake was the power of the commissioners to control the employes of the register of wills. The factual situation was this: The plaintiff-register forbade his employes to punch a time clock placed in the building as an obligatory chore for every register's clerk. The commissioners then withheld the pay of those who didn't punch it. Judge Montgomery held that the imposition of such a condition of clock punching would be outside the limits of the commissioners' privilege or authority. If the commissioners do not even have the right to check on the domestic relations employes attendance at work, how can they properly be held liable for acts of commission or omission by the domestic relations people?

Most of the cases in this field have come up in quarrels over the control of the court's budget. In the famous case of Comm. ex rel. Carroll v. Tate, 442 Pa. 45 (1971), it was held that the legislative branch of government could not even restrict the activities of the court by the negative method of refusing to fund the court's budget in full. If that unanimous decision rendered only two years ago, is still the law of Penn-

---

[2] August term 1973, No. 40, Court of Common Pleas of York County.

sylvania, it seems outrageous to expect the commissioners to exercise positive control over the day-to-day activities of domestic relations officers in collecting support money from errant husbands and fathers.

The complaint in trespass admits in paragraph 3 that ". . . there was created an Adult Probation and Domestic Relations Office as part of the judicial system which was in charge of handling non-support petitions." This seems to us to be recognition by plaintiff himself that the bench warrant was a judicial, not a commissioners' function. Perhaps we are setting up a man of straw to knock down here, since no one would consider that the commissioners have any right to incarcerate people for nonsupport. However, so that it will be clear to everyone, we wish to point out that Uniform Reciprocal Enforcement of Act of July 13, 1953, P. L. 431, as amended, 62 PS §2043.36, provides as follows:

"If a person duly served with a copy of a complaint and order shall fail to appear, the court may issue an attachment, directed to the sheriff or other proper officer of the county, directing and commanding that the person named as having failed to appear be brought before the court at such time as the court may direct, at which time the court may adjudge said person in contempt of court and, in its discretion, may commit such person."

See also Act of May 24, 1917, P. L. 268, 19 PS §1152.

Obviously, this is a judicial function. The Commissioners cannot command the sheriff or the probation officers to seize anyone or bring him into court or hold him for an appropriate time. Such a thing, even if it were provided by some ordinance, statute or practice, would be in violent derogation of the concept of separation of powers.

The Commissioners of Washington County have never claimed any such authority. The authority to issue a bench warrant is vested in a judge and no one else can sign one. A judge of the Court of Common Pleas is a Commonwealth officer, not a county officer.

For all these reasons, the demurrer must be sustained. It seems to us impossible that any valid claim in the premises can be made against the county and we, therefore, dismiss the complaint without allowing any period of time in which to consider amendment.